UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 2:97-ms-129 |
| MICHAEL E. CARRICO | | |
| | : | Judge Holschuh |

## MEMORANDUM AND ORDER

This matter is before the Court, pursuant to Bankruptcy Rule 9033, on the objections of Michael E. Carrico, Gina Dougherty, Danny Bank and Patrick A. T. West to the order of civil contempt entered February 5, 1997 and the judgment entered March 12, 1997 by the United States Bankruptcy Court for the Southern District of Ohio.[1]

**I. Background**

In July 1995, Michael Carrico filed a Chapter 13 case that was later voluntarily converted to a Chapter 7 case. On November 1, 1995, Patrick A. T. West was substituted as counsel for Carrico and, on November 21, 1995, Myron Terlecky was appointed as the Bankruptcy Trustee.

At some point after filing for bankruptcy, Carrico decided that he wanted to sell the liquor license from his defunct restaurant, The Clock, and approached an attorney, Gina Dougherty, to assist him in that endeavor. On January 15, 1996, Carrico entered into a purchase agreement for the sale of the liquor license to Mr. Antonio Ornelas, President of Corona, Inc. On January 19, 1996, Danny Bank, an attorney for Corona, gave Dougherty $16,230.00 for the purchase of the liquor license. Dougherty placed those funds in an escrow account.

---

[1] The record of this case includes an appeal to the Bankruptcy Appellate Panel of the Sixth Circuit and an appeal to this Court. As a result of a number of factors, there has been an unusual delay in the issuance of this Memorandum and Order, for which the Court apologizes.

On January 26, 1996, Dougherty contacted West with respect to the purchase agreement. West apparently told Dougherty that he had taken care of Carrico's bankruptcy, and asked for a copy of the purchase agreement. Dougherty sent West a facsimile of the purchase agreement and West thereupon sent a copy to the Trustee.

After learning of the proposed transfer of the liquor license, the Trustee sent a letter to Dougherty advising her that Carrico did not have authority to sell the liquor licence because it constituted property of the bankruptcy estate under the control of the Trustee. Dougherty contends that she did not receive this letter.[2] On that same day, *i.e.,* January 26, 1996, the Trustee filed a motion with the bankruptcy court for authorization to obtain credit, pursuant to 11 U.S.C. § 364, in order to pay the filing fee to renew the liquor license. The Trustee also requested an expedited hearing on this motion.

An expedited hearing on the Trustee's motion to obtain credit was held on January 31, 1996 at 9:00 a.m. Carrico, West and the Trustee were present at this hearing. During the hearing, the Trustee informed the bankruptcy court that Dougherty held proceeds from the liquor license that had been sold without his knowledge and without prior court authorization. The bankruptcy court then orally ordered Dougherty to turn over all proceeds by January 31, 1996, at 5:00 p.m. and established a show cause hearing for February 1, 1996 if Dougherty did not comply. The bankruptcy court also instructed the Trustee to prepare an order memorializing its oral ruling.

Following the hearing, Carrico and West went to Dougherty's office. Carrico and West

---

[2]Dougherty stated that, after her January 26, 1996 contact with West, the next contact she had regarding the liquor license was when West and Carrico visited her office on January 31, 1996.

informed Dougherty that Carrico did not have the authority to sell the liquor license.  However, neither West nor Carrico informed Dougherty of the oral order requiring her to turn over any sale proceeds.

Carrico and West then visited Bank's office.  West apparently explained to Bank that the liquor license was property of the bankruptcy estate and, therefore, Carrico could not sell the license without prior court approval.  However, neither Carrico nor West informed Bank of the oral order requiring Dougherty to turn over any sale proceeds.  Bank thereafter relayed this information to Corona.  After contacting Corona, Bank called Dougherty to rescind the purchase agreement.

At approximately 12:20 p.m. on January 31, 1996, the Trustee delivered an unsigned courtesy copy of an order requiring Dougherty to turn over proceeds from the liquor license.  The Trustee also delivered a cover letter which informed Dougherty that the Trustee intended to submit the attached order as requested by the bankruptcy court.  The unsigned order provided:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Gina M. Dougherty, counsel for Corona, Inc., [sic] shall turn over all proceeds resulting from the sale of the liquor license to the Trustee, no later than 5:00 p.m. on January 31, 1996.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if counsel for Corona, Inc., fails to turn over all proceeds from the sale of the liquor license by the date and time specified above, counsel for Corona, Inc. shall appear before the United States Bankruptcy Court, 170 North High Street, Columbus, Ohio 43215, Courtroom B, on **February 1, 1996, at 9:30 a.m.** and show cause why counsel should not be held in contempt.

(Exhibits I, J, attached to Hearing Memorandum of Chapter 7 Trustee  (emphasis original)).  The bankruptcy court signed the order at approximately 1:27 p.m. on January 31, 1996.

3

Bank arrived at Dougherty's office around 2:30 p.m. on January 31, 1996 and delivered a written rescission of the purchase agreement. Bank requested the return of the deposit and Dougherty complied. During this meeting, Dougherty also showed Bank a copy of the unsigned courtesy copy of the bankruptcy court order. Bank noted that the order was unsigned and contained multiple errors. In any event, both Bank and Dougherty agreed that there did not appear to be any reason she could not return the money. Bank then deposited the money into his trust account.

On February 1, 1996, the bankruptcy court held a show cause hearing. Only the Trustee appeared for this hearing.[3] The Trustee informed the bankruptcy court that Dougherty had returned the funds to Bank. The bankruptcy court then issued a second order:

> Pursuant to § 541(a) of the Bankruptcy Code, the license and any sale proceeds are property of the estate and subject to the administration by the Trustee and subject to the orders of this Court. The sale and/or the cancellation of any sale are likewise subject to the jurisdiction of this Court pursuant to § 363 of the United States Bankruptcy Code.
>
> Accordingly, it is ORDERED that all of the funds from the sale shall be turned over to the Trustee by 5:00 p.m. today by any person and/ or entity who has possession and/ or control, including but not limited to Michael E. Carrico, Gina M. Dougherty, Danny Bank, and Corona, Inc.
>
> It is further ORDERED that Michael E. Carrico, Gina M. Dougherty, Danny Bank, and Corona, Inc. shall appear before this Court on <u>Friday, February 2, 1996, at 1:30 p.m.</u>, ... to show cause why they should not be held in civil contempt pursuant to Bankruptcy Rule 9020(b) based upon the unauthorized transfer of the license and the failure to turn over the funds from the sale to

---

[3] Dougherty explains that she did not attend the hearing because she believed that West was handling the issue and because she did not receive a signed copy of the January 31, 1996 order until noon on February 1, 1996.

>the Trustee. Failure to comply with this Order may result in the incarceration of offending parties.
>
>It is further ORDERED that the United States Marshal is directed to serve this Order upon Michael E. Carrico, Gina M. Dougherty, Danny Bank, and Corona, Inc., with costs of service to be paid by the estate.

(<u>Order to Show Cause for Civil Contempt Pursuant to FRBP 9020(b)</u> (February 1, 1996) (emphasis original)).

Dougherty was served with a copy of the second order. However, at that time, she no longer held any funds related to the liquor license. Bank was also served with a copy of the second order. However, Bank was not served until 7:30 p.m. on February 1, 1996. Carrico apparently was not served with a copy of the second order.

A hearing was held on February 2, 1996. Dougherty, Bank, West and the Trustee were present. After the bankruptcy court learned that the funds remained in Bank's trust account, it ordered those funds immediately turned over to the Trustee. Pursuant to the bankruptcy court's order, Bank obtained the funds and delivered them to the Trustee. The bankruptcy court then continued the hearing regarding the issue of civil contempt.

On February 27, 1996, the bankruptcy court issued a third order requiring Carrico, Dougherty, Bank and West[4] to appear on March 20, 1996 and show cause why they should not be held in civil contempt pursuant to Bankruptcy Rule 9020(b). The bankruptcy court also ordered Carrico, Dougherty, Bank and West to file affidavits, on or before March 15, 1996, detailing their actions related to the unauthorized transfer and the failure to turn over the funds to the Trustee. Dougherty and Bank complied with the third order and filed affidavits detailing

---

[4]This was the first time West was ordered to show cause.

their activities related to the liquor license.

On March 15, 1996, West filed a request for disqualification on behalf of Carrico.  The request contended that the Trustee and the bankruptcy judge had financial interests in the bankruptcy estate.  On March 19, 1996, West filed an affidavit of prejudice arguing that, because the bankruptcy judge was prejudiced against him, he could not adequately represent his client(s).  On that same day, the bankruptcy court entered an order denying the request for disqualification.

On March 20, 1996, the bankruptcy court held a continued hearing regarding the issue of civil contempt.  Dougherty, Bank and West provided testimony regarding their actions in connection with the liquor license.  Carrico, however, was prevented from testifying during this hearing.  The court concluded that, because West's testimony appeared to be prejudicial to Carrico, the bankruptcy court must first determine whether West should be disqualified as Carrico's counsel prior to allowing Carrico to testify.

On March 25, 1996, the bankruptcy court entered an order setting a hearing on the issue of disqualification of West as Carrico's counsel.  West filed a memorandum contending that the Code of Professional Responsibility, DR 5-105(c) permitted his continued representation of Carrico.  The bankruptcy court disagreed and, on May 14, 1996, entered an order of disqualification of counsel and gave Carrico thirty (30) days to retain alternative counsel or proceed *pro se*.

On August 12, 1996, West filed a motion for a temporary restraining order and a petition for a writ of mandamus in the United States District Court for the Southern District of Ohio requesting that the bankruptcy judge be ordered to disqualify himself from further participation in Carrico's bankruptcy case.  West based those filings on his speculation that the bankruptcy

judge had a financial interest in the proceedings. On August 14, 1996, the district court held a hearing and dismissed the petition and the motion for a temporary restraining order.

On August 15, 1996, the bankruptcy court held a continued contempt hearing. Neither Carrico nor West appeared. The bankruptcy court then issued an order allowing the parties to file post-hearing briefs. None were filed. On February 5, 1997, the bankruptcy court issued a memorandum opinion and order finding Dougherty, Bank, Carrico and West to be in civil contempt:

> The Court concludes that the Debtor, Ms. Dougherty, Mr. Bank, and Mr. West are in civil contempt. The Debtor, Ms. Dougherty, Mr. Bank, and Mr. West shall be held jointly and severally liable for the professional fees and expenses incurred by the Trustee and the United States Marshal to recover the sale proceeds and the professional fees and expenses incurred during the course of this civil contempt proceeding, including those associated with any appeal.

(In re Carrico, 206 B.R. 447, 456 (Bankr. S.D. Ohio 1997)).

Carrico, Dougherty, Bank and West each filed timely objections to the bankruptcy court's memorandum opinion and order finding them in contempt of court. On March 6, 1997, the bankruptcy court denied all objections. On March 12, 1997, the bankruptcy court entered a judgment against Carrico, Dougherty, Bank and West:

> Judgment is hereby awarded to Myron N. Terlecky, chapter 7 trustee ... for $2,304.25.... It is further **ORDERED** that Michael E. Carrico, Patrick A. T. West, Gina M. Dougherty, and Danny W. Bank shall be jointly and severally liable for payment of this judgment so entered, including interest from date of entry and costs of collection, including those associated with any appeal.

(Judgment Entry (March 12, 1997) (emphasis original)).

Carrico, Dougherty, Bank and West appealed the February 5, 1997 memorandum opinion

and order, the March 6, 1997 denial of their objections and the March 12, 1997 judgment to the Bankruptcy Appellate Panel of the Sixth Circuit. The Panel ruled that it did not have the authority to grant leave to appeal the contested contempt order. The Panel vacated the bankruptcy court's denial of the objections and remanded the matter to the bankruptcy court to transmit the February 5, 1997 order, the objections and the March 12, 1997 judgment to the district court for review.

## II. Discussion

### A. Standard of Review

Section 105(a) of the United States Bankruptcy Code authorizes the issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This language has been construed to allow bankruptcy courts to exercise civil contempt powers. See In re Elder-Beerman Stores Corp., 197 B.R. 629, 632 (Bankr. S.D. Ohio 1996). The procedure for an adjudication of contempt by the bankruptcy court is specifically set forth in Bankruptcy Rule 9020.[5] The Bankruptcy Appellate Panel of the Sixth Circuit discussed the applicable standard of review for this Court:

> Bankruptcy Rule 9020(b) establishes the procedure in bankruptcy court to determine contempt committed outside the presence of the bankruptcy judge:
>
>> (b) **OTHER CONTEMPT**. Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged

---

[5] This Court will use the version of Bankruptcy Rule that was in effect at the time the bankruptcy court issued its order of contempt.

8

> and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense....

Fed. R. Bankr. P. 9020(b).  Subsection (c) of Bankruptcy Rule 9020 describes the effect of objections to a bankruptcy judge's order of contempt:

> (c) **SERVICE AND EFFECTIVE DATE OF ORDER; REVIEW**.  The clerk shall serve forthwith a copy of the order of contempt on the entity named therein.  The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b).  If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

Fed. R. Bank. P. 9033(c).  If timely objections are filed, Rule 9033(d) assigns to the district court responsibility to review contested contempt orders:

> (d) **STANDARD OF REVIEW**.  The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Fed. R. Bank. P. 9033(d).

      Here, the bankruptcy court stated in its Order to Show Cause and in the Contempt Order that Rule 9020(b) applied.  The Appellants each referenced Rules 9020(c) and 9033(b) in their timely objections to the Contempt Order.  These rules required the bankruptcy court's Contempt Order and the timely objections to be reviewed de novo by the United States District Court for the Southern District of Ohio.

In re Carrico, 214 B.R. 842, 844-45 (6th Cir. BAP 1997).  This Court will therefore engage in *de*

*novo* review of the bankruptcy court's February 5, 1997 memorandum opinion and order finding Dougherty, Bank, Carrico and West in contempt of court.

**B. Application**

**1. Dougherty and Bank**

Dougherty and Bank each raise a number of objections to the bankruptcy court's February 5, 1997 order finding them in contempt of court. The key issue, however, is notice. In order to find either Dougherty or Bank in contempt of court, it must be shown that they had either official or actual knowledge of the bankruptcy court order. See In re Snider Farms, Inc., 125 B.R. 993, 996 (Bankr. N.D. Ind. 1991). See also N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 591 (6th Cir. 1987); In re Elder-Beerman Stores Corp., 197 B.R. at 897; In re Stutzman, 151 B.R. 428, 430-31 (Bankr. N.D. Ohio 1987).

The time line of events in this case reveals that neither Dougherty nor Bank had knowledge of the bankruptcy court's order prior to rescinding the purchase agreement:

(1) On January 15, 1996, Carrico entered into a purchase agreement with Corona;

(2) On January 19, 1996, Dougherty accepted a deposit from Bank for the purchase of the liquor license;

(3) On January 31, 1996, the bankruptcy court orally ordered Dougherty to turn over any proceeds from the sale of the liquor license;

(4) Carrico and West visited Dougherty and Bank on the morning of January 31, 1996, but did not inform either Dougherty or Bank of the bankruptcy court's oral order;

(5) Later that same day, *i.e.,* January 31, 1996, Bank called Dougherty to rescind the purchase agreement;

(6) Thereafter, Dougherty received an unsigned courtesy copy of the bankruptcy court order directing her to turn over any proceeds from the sale of the liquor license.

This sequence of events reveals that, when Dougherty finally received actual notice to turn over "proceeds from the sale of the liquor license," there were no "proceeds" to turn over; the agreement had been rescinded.

In any event, in order to be enforceable, a finding of contempt must be based on the refusal to comply with an order of the court that is "definite and specific." See Grace v. Center for Auto Safety, 72 F.3d 1236, 1241 (6th Cir. 1996) (quoting Cincinnati Bronze, 829 F.2d at 591). See also Fed. R. Bankr. P. 9020(b). Any ambiguities in a court's order must be resolved in favor of persons charged with contempt. Grace, 72 F.3d at 1241.

As was discussed *supra*, the unsigned courtesy copy of the order that was submitted to the bankruptcy court provided:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Gina M. Dougherty, counsel for Corona, Inc., [sic] shall turn over all proceeds resulting from the sale of the liquor license to the Trustee, no later than 5:00 p.m. on January 31, 1996.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if counsel for Corona, Inc., fails to turn over all proceeds from the sale of the liquor license by the date and time specified above, counsel for Corona, Inc. shall appear before the United States Bankruptcy Court, 170 North High Street, Columbus, Ohio 43215, Courtroom B, on **February 1, 1996, at 9:30 a.m.** and show cause why counsel should not be held in contempt.

(Exhibits I, J, attached to Hearing Memorandum of Chapter 7 Trustee (emphasis original)). As noted by Dougherty and Bank, the unsigned order: (1) misidentified Dougherty as counsel for Corona, and (2) required counsel for Corona to turn over proceeds from a sale of the liquor license.

This Court concludes that the unsigned courtesy copy of the order that was submitted to

11

the bankruptcy court, to which Dougherty admits receiving and Bank admits viewing, cannot be described as "definite and specific" enough to support the bankruptcy court's finding of contempt against Dougherty and Bank. It would have been reasonable for Dougherty and Bank to conclude that there had been no sale of the liquor license and that turning over the liquor license itself would satisfy the bankruptcy court.

Moreover, when Dougherty actually received notice to appear for a show cause hearing on February 2, 1996, she complied. Additionally, when Bank appeared before the bankruptcy court on February 2, 1996, and was ordered to turn over the funds in his possession, he complied. Therefore, this Court concludes that Dougherty and Bank's objections to the bankruptcy court's February 5, 1997 memorandum opinion and order are meritorious.

### 2. Carrico

The Bankruptcy Judge found Carrico in contempt because he failed to turn over property to the Trustee in violation of § 541(a)(1) of the United States Bankruptcy Code. In re Carrico, 206 B.R. at 454-55. The bankruptcy court's conclusion in this regard appears reasonable given Carrico's prior experience in bankruptcy and the notice that Carrico actually received. Carrico was present on January 31, 1996 when the bankruptcy court explained that Carrico did not have authority to sell the liquor license, that the license or proceeds therefrom were the property of the bankruptcy estate, and that Dougherty should turn over any proceeds from the sale of the liquor license. Carrico, however, failed to inform his attorney, Dougherty, that the bankruptcy court had ordered her to turn over any funds in her possession related to the liquor license.

Nevertheless, this Court concludes that the order of contempt against Carrico cannot stand. The Sixth Circuit has specifically recognized that, "'[l]ike any civil litigant, a civil

contemnor [sic] is ... clearly entitled to those due process rights, applicable to every judicial proceeding, of proper notice and an impartial hearing with an opportunity to present a defense....'" Cincinnati Bronze, Inc., 829 F.2d at 589 (quoting Consolidation Coal Co. v. Local Union No. 1784, United Mine Workers, 514 F.2d 763, 765 (6th Cir. 1975)).

A review of the proceedings before the bankruptcy court reveals that Carrico was not given an opportunity to respond during the contempt hearings. Moreover, while the bankruptcy court allowed the parties to file post-hearing briefs, there is no indication, in the record before this Court, that Carrico received notice of his opportunity to file a post-hearing brief. Therefore, this Court finds Carrico's objections meritorious.

### 3. West

The Bankruptcy Judge found West in contempt for "interfer[ring] with the Court's efforts to have the estate asset returned." In re Carrico, 206 B.R. at 449. The bankruptcy court noted that West was at the January 31, 1996 hearing in which the court explained that the sale of the liquor license was unauthorized and orally ordered Dougherty to turn over the proceeds therefrom. The bankruptcy court concluded that "West's actions served to impede the efforts of the Court and Trustee to recover the funds ...." Id. at 455-56.

As was noted *supra*, West was in attendance at the January 31, 1996 hearing and had actual knowledge of the bankruptcy court's order for Dougherty to turn over the funds. West also met with both Dougherty and Bank prior to the rescission of the purchase agreement. West thus had both the opportunity and an obligation, as an officer of the court, to inform Dougherty of the bankruptcy court's oral order. Nevertheless, West failed to do so. This Court therefore

agrees that West impeded the efforts of the bankruptcy court and the Trustee to recover funds.[6]

West's main contention in opposition to the contempt order appears to be that, because there was no sale, there could be no compliance with the bankruptcy court's order. As was discussed *supra*, the bankruptcy court orders identified proceeds from the sale of the liquor license. This Court agrees that, technically speaking, there was no sale of the liquor license. Nevertheless, there was a contract for the sale of the liquor license, to which a deposit had been made. Both West and Carrico could have provided information to Dougherty that would have permitted her to turn over the deposit to the Trustee and allowed the "sale" to be completed. Instead, West and Carrico provided only enough information to suggest that the contract should be rescinded.

Next, West contends that the bankruptcy judge violated the constitutional rights of Dougherty, Bank, Carrico and West by failing to advise them of their right to counsel during the contempt hearings. This Court notes that, while a right to counsel exists in a civil contempt hearing where an individual faces incarceration, see In re Winslow, 131 B.R. 171, 173-74 (D. Colo. 1991), it does not appear that West ever faced such a sanction.[7]

---

[6]This Court also notes that West's testimony during the March 20, 1996 contempt hearing reveals a certain disrespect for the authority of the bankruptcy court. West explained that he did not seek to prevent the sale of the liquor license because he believed that it would take too much time to transfer the license to the Trustee and then to the buyer. However, this was not West's decision to make. Additionally, after attending the January 31, 1996 hearing, West apparently encouraged the rescission of the purchase agreement; West argues that he was trying to protect his client from liability for entering into a contract to sell the liquor license when his client had no authority to make such a sale.

[7]This Court concludes that there is no need to address West's argument with respect to Dougherty, Bank or Carrico.

West also argues that he was not given reasonable time to prepare a defense as required by Bankruptcy Rule 9020. West was first ordered to show cause on February 27, 1996. In that order, the bankruptcy court required, *inter alia*, West to appear on March 20, 1996 and show cause why he should not be held in civil contempt pursuant to Bankruptcy Rule 9020(b). This Court concludes that the bankruptcy court provided West a reasonable time in which to prepare a defense.

This Court also notes that West has raised a number of other objections that are irrelevant to the bankruptcy court's conclusion that West acted in contempt of court. For example, West challenges the notice received by Dougherty and Bank from the bankruptcy court. However, whether or not the bankruptcy court strictly complied with Bankruptcy Rule 9020 with respect to Dougherty or Bank is simply not relevant to the contempt order entered against West personally. The issue is whether West impeded the bankruptcy court and/or the Trustee in attempting to recover certain funds. West also contends that the February 1, 1996 order falsely stated that, "[p]ursuant to § 541(a) of the Bankruptcy Code, the license and any sale proceeds are property of the estate." This, again, does not change the fact that West had an opportunity to provide certain information to Dougherty and Bank but failed to do so.

Finally, West challenges the contempt order as a "sham" civil contempt order and argues that it is in reality, a criminal contempt order. This Court cannot agree. The Sixth Circuit has recognized that, "[w]ith respect to civil contempt proceedings, '[j]udicial sanctions ... may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" <u>Electrical Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Elec. Service Co.</u>,

340 F.3d 373, 379 (6th Cir. 2003) (quoting United States v. United Mine Workers of America, 330 U.S. 258, 303-04 (1947)).

This Court concludes that it was proper to award the Trustee his costs associated with recovering the funds held by Dougherty and Bank. See In re Jaques, 761 F.2d 302, 306 (6th Cir. 1985). However, the evidence before this Court reflects that the Trustee incurred expenses in the amount of $845.50, not $2,304.25, as was awarded by the bankruptcy court. Moreover, the award of any costs associated with an appeal was improper. Therefore, while the award of sanctions is appropriate, the matter must be remanded to the bankruptcy court to determine the appropriate amount of those sanctions.

## IV. Conclusion

The objections of Dougherty, Bank and Carrico are **SUSTAINED**, and the bankruptcy court's February 5, 1997 memorandum opinion and order finding them in contempt and the bankruptcy court's March 12, 1997 judgment against them are **VACATED**, but only with respect to Dougherty, Bank and Carrico. The objection of West to the bankruptcy court's February 5, 1997 memorandum opinion and order finding him in contempt is **OVERRULED**. This case is **REMANDED** to the bankruptcy court for further proceedings consistent with this Memorandum and Order, including a determination as to whether $845.50 is the correct amount of expenses incurred by the Trustee as incorporated in the bankruptcy court's March 12, 1997 judgment.

**IT IS SO ORDERED.**

May 4, 2005 /s/ John D. Holschuh
John D. Holschuh, Judge
United States District Court